UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION


ANDREW VINYARD,

        Plaintiff,

v.

WARREN EVANS, Wayne County Sheriff, WAYNE
COUNTY SHERIFF'S DEPARTMENT, JOHN DOE,
Booking Officer, and JOHN DOE, Escorting Officer,

        Defendants.

Case No. 07-10241

Honorable Julian Abele Cook, Jr.

## ORDER

On January 16, 2007, the Plaintiff, Andrew Vinyard, acting without the benefit of an attorney, filed a complaint pursuant to 42 U.S.C. § 1983,[1] in which he charged each of the Defendants[2] with violating his fundamental rights to the protections of the Eighth Amendment to the United States Constitution when they allegedly failed to protect him from an assault by another inmate. On April 3, 2007, this case was referred to Magistrate Judge Charles E. Binder for all pretrial matters. Approximately two months later, on June 8, 2007, the Defendants filed a motion, with each movant seeking to obtain dispositive relief on the basis of Fed. R. Civ. P. 12(b)(6) and

---

[1]Vinyard's motion to file an amended complaint was granted on April 16, 2007.

[2]The Defendants have been identified by Vinyard as (1) Warren Evans who is the Sheriff of Wayne County, Michigan, (2) the Sheriff's Department of Wayne County, Michigan, (3) an unidentified deputy sheriff whom he has labeled as "John Doe Booking Officer," and (4) an unidentified deputy sheriff whom he has called "John Doe Escorting Officer." Vinyard - through his complaint - states that he is suing these Defendants "within their individual capacities."

1

56(b). Vinyard, after seeking and receiving an extension of time in which to file a response to the Defendants' motion, filed his opposition papers with the Court on August 31, 2007. On November 5, 2007, Magistrate Judge Binder submitted a report to the Court in which he recommended that the Defendants' motion for summary judgment be granted. Vinyard filed a timely objection to the report on November 28, 2007.[3]

I.

At all times that are relevant to this controversy, Vinyard was housed as an inmate at the Parnall Correctional Facility in Jackson, Michigan while under the custody of the Michigan Department of Corrections ("MDOC"). Vinyard claims that, upon his admittance to the Wayne County (Michigan) Jail on February 10, 2006, he "informed [the] John Doe Booking Officer [and the "John Doe Escorting Officer"] that he suffered from being Bipolar (Manic Depressive Mental Health Disorder), with a long history of mental health care problems and treatment, and that he was currently under active prescription to several psychotropic medications." Notwithstanding these disclosures, he complains that neither of these penal officers undertook any steps which would have lead to an examination and necessary medical treatment by mental health care professionals.

In February 2006,[4] Vinyard asserts that he was assaulted by three other inmates, all of whom beat him, placed his hand in a steel door casing, and, thereafter, slammed the steel jail door on his fingers which nearly caused two fingers to be severed. According to him, his calls for

---

[3]Although this written opposition was not filed within the obligatory ten day period, as required by 28 U.S.C. § 636(b)(1), Vinyard sought and subsequently obtained an extension of time from the Court to file his objections. This extension was granted by the Court on December 3, 2007.

[4]In his amended complaint, Vinyard states that the assault, about which he complains, occurred "[o]n or about February 12th and/or 14th, 2006."

2

medical assistance were unheeded for approximately "two full hours" after the alleged assault. His fingers were stitched and pain medication was prescribed by the medical personnel.

In his court documents, it is Vinyard's position that "[h]ad [he] been properly screened and processed upon admittance to the Wayne County Jail and appropriately placed in the psychiatric/mental health care facilitation [*sic*] of the jail, [he] would not have been the subject of cruel torment and physical assaults by general population inmates . . . [or] suffered physical injury causing acute pain and suffering." He also maintains that the "John Doe Jail Administrator" beached his duty to ensure that the jail staff are "properly trained, supervised, and aware of proper and adequate procedures." Vinyard is also adamant when asserting that (1) the Jail Administrator and the Wayne County Sheriff showed "deliberate indifference to [his] serious health care needs," (2) his injury was the result of "a policy or custom of the governmental entity, to-wit: the Wayne County Jail [D]efendants as named in this § 1983 civil action," and (3) the "John Doe Booking Officer and [the] John Doe Escorting Officer displayed a wanton and deliberate indifference to [his] serious mental health care needs . . . that resulted in [him] being subject [*sic*] to cruel torment and physical assault causing serious and painful physical injury from other jail inmates."[5]

## II.

A motion for summary judgment will be granted under Fed. R. Civ. P. 56© where "there

---

[5]Vinyard alleges for the first time in his responsive brief that the Defendants (1) displayed deliberate indifference by placing him "in an unlocked holding cell where other inmates could freely enter and leave his cell as they pleased" and (2) "knew that most of Wayne County Jail's prisoner population is comprised of African Americans, that [he] is Caucasian, and that violent race related problems are prevalent in the Wayne County Jail."

3

is no genuine issue as to any material fact and that the movant is entitled to the entry of a judgment as a matter of law." All facts and inferences must be viewed in the light most favorable to the non-moving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587 (1986). The moving party has the initial burden of showing the absence of a genuine issue of a material fact as to an essential element of the non-movant's case. *Street v. J.C. Bradford & Co.,* 886 F.2d 1472, 1479 (6th Cir. 1989)(citing *Celotex Corp. v. Catrett,* 477 U.S. 317 (1986)). In determining whether the moving parties have met their burden, a court may consider the plausibility of their evidence. *Matsushita*, 475 U.S. at 587-88. The entry of a summary judgment is also proper if the moving parties are able to demonstrate that the non-moving party is unable to meet his burden of proof. *Celotex*, 477 U.S. at 326.

In response, the non-moving party cannot rest merely on his pleadings alone. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242 (1986). Instead, the non-moving party has an obligation to present "significant probative evidence" to show that "there is [more than] some metaphysical doubt as to the material facts." *Moore v. Philip Morris Cos.,* 8 F.3d 335, 339-40 (6th Cir. 1993). If the nonmoving party fails to adequately respond to a summary judgment motion, a district court is not required to search the record to determine whether genuine issues of a material fact exist. *Street*, 886 F.2d at 1479-80. Rather, the court will rely upon the "facts presented and designated by the moving party." *Guarino v. Brookfield Twp. Trustees*, 980 F.2d 399, 404 (6th Cir. 1992). The Sixth Circuit Court of Appeals (Sixth Circuit) explicitly instructed that it is "utterly inappropriate for the court to abandon its position of neutrality in favor of a role equivalent to champion for the non-moving party: seeking out facts, developing legal theories, and finding ways to defeat the motion." *Id.* at 406.

After examining the parties' evidence, the court is then encouraged to determine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Booker v. Brown & Williamson Tobacco Co.,* 879 F.2d 1304, 1310 (6th Cir. 1989)(quoting *Anderson*, 477 U.S. at 251-52). However, a summary judgment will not be granted "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248.

III.

In 1998, the Sixth Circuit declared that "[p]rison officials have an affirmative duty to protect inmates from violence perpetrated by other prisoners." *Wilson v. Yaklich*, 148 F.3d 596, 600 (6th Cir. 1998)(citing *Farmer v. Brennan*, 511 U.S. 825, 847 (1994)). "Nonetheless, not all injuries suffered by an inmate at the hands of another prisoner result in constitutional liability for prison officials under the Eighth Amendment." *Wilson*, 148 F.3d at 600. In an unpublished opinion, the Sixth Circuit opined that

> A prison official violates the Eighth Amendment only when . . . [f]irst, the deprivation alleged must be, objectively, 'sufficiently serious' [and] [s]econd, when the offending conduct itself is not a criminal penalty. It is the 'unnecessary and wanton' infliction of pain that implicates the Eighth Amendment . . . [t]hus, a prison official will be liable under the Eighth Amendment for failing to protect an inmate only if the official acted with 'deliberate indifference.'

*Davis v. Brian*, 1999 WL 503522, *3 (6th Cir. July 9, 1999)(unpublished). "Obduracy or wantonness, not inadvertence or good faith error, characterizes deliberate indifference." *Gibson v. Foltz*, 963 F.2d 851, 853 (6th Cir. 1992).

In the present case, when viewing the facts in a light that is most favorable to Vinyard, the Defendants failed to protect him from an assault by three fellow prisoners and delayed medical treatment by two hours for his injured fingers. Although Vinyard complains, without any

5

supporting case law, that the cause of the assault was his placement in the general population, he has failed to show how this prison assignment created a higher risk of assault for him than being placed in the psychiatric population. The case which Vinyard brings to this Court is distinguishable from those situations in which the prison officials are alleged to have ignored a prior dispute between inmates, one of whom is subsequently injured. See, e.g., *Jones v. Beard*, 145 Fed. Appx. 743 (3d Cir. 2005). Significantly, the Defendants have noted - without refutation - that Vinyard neither reported the purported assault nor mentioned the incident when seeking medical assistance for his injured fingers. On the basis of the current record, there is no evidence that (1) the Defendants had been forewarned by Vinyard, or (2) any of the Defendants knew or should have known about the potential for assault against him by members of the general prison population. Under these circumstances, the Defendants could not have been - and were not - deliberately indifferent to any risk of harm to Vinyard for the claimed assault. *Farmer*, 511 U.S. at 844; *Davis, supra*. Deliberate indifference will be found to exist only where the defendants had notice of a substantial risk of harm. *See Walker v. Norris*, 917 F.2d 1449, 1453 (6th Cir. 1990).

Even assuming that Vinyard's cell door was open which enabled the general population in the prison to have access to him, this charge - without more - fails to show deliberate indifference by the Defendants. *Davis v. Brian*, 182 F.3d 916 (6th Cir. 1999)("Even if plaintiff could show that the policy was in place [not opening cell doors when others were on the catwalk], opening plaintiff's cell door while [assaulting inmate] was on the catwalk arguably amounts only to negligence, not deliberate indifference, without actual knowledge on [defendant's] part of a substantial risk that [assaulting inmate] would inflict serious harm upon the plaintiff.") To the extent that Vinyard's responsive brief asserts "a right to be housed with members of his own race,

culture, or temperament," the Constitution gives to him no such right. In fact, *Johnson v. California*, 543 U.S. 499 (2005) requires strict scrutiny of the racial segregation of inmates. Finally, Vinyard maintains that the two hour delay between the assault and the medical treatment constitutes a violation of his rights under the Eighth Amendment. Delay in access to medical attention can violate the Eighth Amendment if it is "tantamount to [an]'unnecessary and wanton infliction of pain.'" *Hill v. DeKalb Regional Youth Detention Center,* 40 F.3d 1176, 1187 (6th Cir. 1994). However, even assuming Vinyard's allegations to be correct and the treatment of his injured fingers was delayed for an extended period of time, he has not asserted any ill effect from the alleged failings by the Defendants. An inmate, who argues that an unwarranted delay in the treatment of his injuries constitutes an Eighth Amendment violation, "must place verifying medical evidence in the record to establish the detrimental effect of the delay." *Napier v. Madison County*, 238 F.3d 739, 742 (6th Cir. 2001). Vinyard's failure to even point to a detrimental effect from the injuries to his fingers due to the delay is fatal to his claim. Napier, supra; *Harper v. Wayne County*, 2005 WL 2452124, *5 (E.D. Mich. Sept. 30, 2005)(no deliberate indifference where treatment for closed head injury, abrasions, and nasal bone fracture was delayed one hour and no detrimental effect as a result of the delay). Vinyard writes that the magistrate judge failed "to acknowledge the controlling clarification of *Blackmore* as to claims he believes to be under the *Napier* standard."

In *Blackmore v. Kalamazoo County*, 390 F.3d 890 (6th Cir. 2004), the Sixth Circuit stated that (1) "the 'verifying medical evidence' requirement is relevant to those claims involving minor maladies or non-obvious complaints of a serious need for medical care," and (2) "*Napier* does not apply to medical care claims where facts show an obvious need for medical care that laymen would readily discern as requiring prompt medical attention by competent health care providers." *Id.* at

7

898. With recognition that Vinyard has not claimed to have suffered any ill effects arising from the Defendants' alleged delay in providing him treatment, *Blackmore* is inapplicable to this case.

To the extent that Vinyard's accusation is based upon the Defendants' alleged failure to supervise its prison officers, such a claim must also fail. Supervisory liability under § 1983 cannot attach where the allegation of liability is based upon a "mere failure to act." *Bass v. Robinson*, 167 F.3d 1041, 1048 (6th Cir. 1999). Instead, a "§ 1983 plaintiff - such as Vinyard - must show that a supervisory official at least implicitly authorized, approved or knowingly acquiesced in the unconstitutional conduct of the offending subordinate." *Turner v. City of Taylor*, 412 F.3d 629, 643 (6th Cir. 2005). There has been no averment that any of the Defendants did anything to authorize, approve, or knowingly acquiesce in the claimed unconstitutional conduct. Thus, Vinyard cannot withstand the entry of a summary judgment on this ground.

Finally, inasmuch as Vinyard has failed to establish that a constitutional violation occurred, the Defendants are entitled to qualified immunity from liability to him under these circumstances. *Tucker v. City of Richmond*, *KY*, 388 F.3d 216, 219 (6th Cir. 2005). Consequently, the issue of exhaustion of administrative remedies need not be addressed by the Court.

IV.

For the reasons that have been stated above, the Court adopts in full the report of Magistrate Judge Binder. A summary judgment is granted in favor of the Defendants.

IT IS SO ORDERED.

Dated: March 31, 2008         s/ Julian Abele Cook, Jr.
       Detroit, Michigan      JULIAN ABELE COOK, JR.
                              United States District Court Judge

## CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing Order was served upon counsel of record via the Court's ECF System to their respective email addresses or First Class U.S. mail to the non-ECF participants on March 31, 2008.

                                                                s/ Kay Alford
                                                                Case Manager